UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

AMANDA GILBERT,                          )
                                         )     2014 MAR -4  A II: 56
            Plaintiff,                   )
                                         )     CLERK'S OFFICE
      v.                                 )     AT GREENBELT
                                         )
                                         )     Civil Action No. _____
FRESHBIKES LLC, FRESHBIKES2, LLC         )
FRESHBIKES MOSAIC, LLC and               )     DKC 14 CV 0609
FRESHBIKES FRANCHISING, LLC,             )     **JURY TRIAL DEMANDED**
                                         )
            Defendants.                  )

## COMPLAINT

Plaintiff Amanda Gilbert, by and through her attorneys, for her complaint against

Defendants Freshbikes LLC, Freshbikes2, LLC, Freshbikes Mosaic, LLC and Freshbikes

Franchising, LLC (collectively "Freshbikes"), alleges as follows:

### NATURE OF THE ACTION

1.     This action arises from Freshbikes' unlawful gender discrimination and retaliation

in the terms, conditions and discharge of Plaintiff's employment in violation of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").  For more than

two years, Freshbikes routinely subjected Plaintiff to sexual harassment and a hostile work

environment, denied her promotion and advancement opportunities, and then terminated

Plaintiff's employment in retaliation for her complaining about Freshbikes' discriminatory

conduct.  Plaintiff seeks to recover lost wages and benefits, compensatory damages and punitive

damages for the harm suffered as a result of Freshbikes' discriminatory and retaliatory conduct,

as well as attorneys' fees, costs and injunctive relief for Freshbikes' violation of Title VII.

Plaintiff also seeks to recover unpaid wages and overtime compensation, liquidated damages,

1

interest, attorneys' fees, costs, declaratory and injunctive relief for Freshbikes' violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (the "FLSA").

PARTIES

2.      Plaintiff Amanda Gilbert is a 26-year-old woman who is a member of a "protected class" under Title VII.

3.      At all times relevant to this Complaint, Plaintiff was an "employee" within the meaning of Title VII and the FLSA.

4.      Defendant Freshbikes2, LLC is a Maryland limited liability company with its principal place of business located at 7626 Old Georgetown Road, Bethesda, MD 20814.

5.      Defendant Freshbikes LLC is a Virginia limited liability company with its principal place of business located at 3924 Wilson Boulevard, Arlington, VA 22203.

6.      Defendant Freshbikes Mosaic, LLC is a Virginia limited liability company with its principal place of business located at 2910 District Ave, Fairfax, VA 22031.

7.      Defendant Freshbikes Franchising, LLC is a Virginia limited liability company with its principal place of business located at 3924 Wilson Boulevard, Arlington, VA 22203.

8.      Freshbikes owns, operates, and manages three bicycle retailers in the Washington, D.C. area, one of which is located in Bethesda, Maryland.  Upon information and belief, Scott McAhren is an owner of all three stores.

9.      Freshbikes holds itself out as a high-end store that offers top of the line bikes, professional service, and a client-friendly sales staff.  On its website, Freshbikes calls itself "Your Boutique Bicycle Superstore" and notes that it has been "[r]ated one of the [nation's] top 100 shops every year [it has] been open."  Some of the bikes sold at Freshbikes cost as much as

2

ten thousand dollars ($10,000) and many customers spend thousands of dollars on bikes, bike equipment, and apparel.

10.     Despite this professional image, Freshbikes engages in blatant discrimination and sexual harassment against its female staff, which comprises a small percentage of the total staff. The environment is that of a crude and boorish men's locker room filled with comments and actions which are highly derogatory and offensive to women.

11.     At all times relevant to this Complaint, Freshbikes is and was a business entity employing fifteen (15) or more individuals and thus is an "employer" within the meaning of Title VII.

12.     At all times relevant to this Complaint, Freshbikes is and was an "employer" within the meaning of § 207(a)(2) of the FLSA.  The overtime wage provisions set forth in the FLSA apply to Freshbikes.

13.     At all times relevant to this Complaint, Freshbikes, as the employer of Plaintiff, was and is legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the paragraphs set forth herein.

JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action involves federal statutes.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.     On May 20, 2013, Plaintiff timely filed her charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

17.     On December 6, 2013, Plaintiff was issued a Right to Sue Letter by the EEOC. *See* Exhibit A, EEOC Right to Sue Letter.  The EEOC issued the Right to Sue Letter upon Plaintiff's request because more than 180 days had passed since the filing of her charge.

18.     This Complaint is filed within 90 days of the date on which Plaintiff received the EEOC's Right to Sue Letter.  Plaintiff has exhausted her administrative remedies and all conditions precedent to filing this lawsuit.

FACTUAL ALLEGATIONS

19.     Plaintiff Amanda Gilbert has been an avid cyclist for more than eight years.  She raced bikes at the collegiate level, which requires tremendous training, commitment and time spent on the bike.  Because she attended a small school, she often did her own bike repair and maintenance.  She also worked in a bike shop during college.

20.     She graduated from college in 2009 and continued to ride her bike and look for other opportunities to use her skills and interest in cycling.  From September 2009 to May 2010, she worked as a sales associate and mechanic at Hudson Trail Outfitters ("HTO"), which sells a variety of bikes including mountain bikes.  She decided to leave HTO and accept a position at Freshbikes because she was interested in broadening her skill set and working in a store that sold higher end road bikes.

21.     In May 2010, Ms. Gilbert began working as a part-time sales associate at Freshbikes' Bethesda store.  She worked at this store until around Summer or Fall of 2011, when the owner, Scott McAhren, asked if she wanted to work more hours, which required splitting her time between the Arlington and Bethesda locations.  She accepted this offer and received an increase in her hourly pay rate.  From Fall 2011 to February 2012, she typically worked two days a week at the Arlington store and three days a week at the Bethesda store.

22.     Throughout the roughly twenty-one months Ms. Gilbert worked at the Bethesda store (May 2010 through February 2012), the work environment was both unprofessional and hostile to women.  In fact, Ms. Gilbert's assistant manager at the Bethesda location, Dave Neubaeur, told her flat out that "this company is not very good for women."

23.     Paul Hoover, who served as the manager of the Bethesda store during a portion of the time Ms. Gilbert worked there, regularly made sexist and sexually derogatory comments around Ms. Gilbert and other employees.

24.     Whenever a woman walked past the store, Mr. Hoover and other male employees would yell out a number to rate her physical appearance.  This was done when Ms. Gilbert was in clear hearing range of the shouting, and the male employees did nothing to moderate this practice despite her presence.  In another example, Mr. Hoover said in front of Ms. Gilbert and other co-workers, "I do not trust anything that sucks my dick."

25.     In February 2012, Ms. Gilbert became a full-time sales associate at the Arlington location and started receiving a salary with benefits.  She typically worked six days a week, two of which were half-days.  She primarily sold bikes and equipment and, after becoming certified as a bike fitting specialist in March 2012, she also performed basic fits for customers.

26.     During her employment at Freshbikes, Ms. Gilbert received an annual salary as a non-exempt employee.  While working at Freshbikes' Arlington location from February 2012 to November 2012, she routinely worked approximately fifty (50) hours a week.  She was never paid any overtime for any time she spent working more than forty (40) hours per week.

27.     Ms. Gilbert was regularly directed to work with female customers who were interested in higher end bikes, and she always worked on Saturdays, the busiest day of the week for Freshbikes.

5

28. The hostile work environment at the Arlington store reflected the company-wide policy that Freshbikes was "not very good for women," and it was even worse than the Bethesda store.

29. Mr. McAhren spent a considerable amount of time at the Arlington store, and he, along with the store's manager, Jason Walder, were the highest-ranking employees at that location. They fostered a sexually hostile work environment by engaging in, condoning, and encouraging sexual harassment against women, including Ms. Gilbert. The following managers and employees also contributed to the hostile work environment at Freshbikes: Brad Copeland, Dan Bruechert, Ian Knabe, Paul Hoover, Harrison Leavens, and Curtis Pippins.

30. During the time Ms. Gilbert worked at the Arlington store, she was the only full-time female employee and was often the only female employee working in the store. On Saturdays, Ms. Gilbert was often the only female employee working along with eight male employees. Because most of the time she was the only female employee in the store, the sexually derogatory and offensive comments were primarily directed toward, and felt by, her.

31. Although many of the hostile comments were heard only by the store personnel, one remark early in Ms. Gilbert's tenure at the Arlington store was made directly to the customers she was assisting. In the Spring of 2012, while Ms. Gilbert was helping two male customers find a bike seat that would fit, the store manager, Mr. Walder, told them: "Amanda will make your nuts feel better." Ms. Gilbert was both highly embarrassed and offended by this crass and inappropriate reference to male genitalia, and to the suggestion that she would offer something of a sexual nature to these two men.

32. The store manager did not stop at sexually inappropriate remarks. Shortly after the bike seat incident, when Ms. Gilbert was about to get into the shower at work (cyclists often

6

shower after riding to work), she noticed that Mr. Walder was also about to shower. As she turned to leave the room, Mr. Walder noticed she was there and said "Want to join me?" On another occasion, he invited her into the store office while he was changing his clothes. Both times Ms. Gilbert declined the store manager's sexual advances.

33.    The hostile work environment took many forms at the Arlington store. For example, the male managers and employees brazenly and repeatedly described, in the presence of Ms. Gilbert, their sexual encounters with women, and often made inappropriate comments about what they assumed to be Ms. Gilbert's sex life.

34.    Mr. Walder, the store manager, regularly made hostile comments to Ms. Gilbert about her ex-boyfriend, Gonzalo Escobar. In particular, sometime in the Summer of 2012 when Mr. Escobar dropped Ms. Gilbert off at work in the morning, Mr. Walder announced to the other employees that she was doing a "walk of shame." On another occasion, Mr. Walder said to Ms. Gilbert, referring to Mr. Escobar's ethnicity, "it is okay to look like a Mexican but not to smell like one."

35.    The sexual harassment and derogatory comments were not confined to the store manager. From May to November 2012, a male co-worker, Brad Copeland, frequently made sexually derogatory comments and engaged in sexually inappropriate conduct toward Ms. Gilbert. In particular, in or about May 2012, while Ms. Gilbert was kneeling over to put away marketing materials, Mr. Copeland used a pole to lift up her skirt in front of other male employees. Mr. Leavens, who according to Freshbikes' website is the current manager of the Arlington store, was there and laughed at the incident. Approximately a week later, in front of other employees, Mr. Copeland again used a pole to lift up Ms. Gilbert's skirt while she was on a

7

ladder putting away some bike wheels. When Ms. Gilbert told Mr. Copeland to stop doing it, he ignored her.

36.     The work environment at Freshbikes was also filled with the repeated use of demeaning words, such as "bitch," "cunt," and "whore," to refer to women.

37.     In July of 2012, Ms. Gilbert went to a restaurant called "District Taco" with several co-workers. At the restaurant, Mr. Copeland called Ms. Gilbert a cunt. Several of Ms. Gilbert's co-workers, including Mr. Leavens, Mr. Davis, Mr. Knabe, and Mr. Bruechert, heard Mr. Copeland call Ms. Gilbert a cunt, but no one defended her or told Mr. Copeland that his comment was inappropriate.

38.     It became increasingly difficult for Ms. Gilbert to continue working with Mr. Copeland. On September 4, 2012, Ms. Gilbert offered to clock Mr. Copeland out at work, and he angrily responded "No!" Later that evening, he sent Ms. Gilbert a threatening text message which said "Don't fuck with me." His hostile response was a direct result of the fact that Ms. Gilbert, as explained further below, had complained to her managers about his inappropriate conduct.

39.     Mr. Copeland's sexual harassment of Ms. Gilbert continued to escalate. On October 11, 2012, he announced that Ms. Gilbert needed Spanx to cover her "fupa" or "gunt." When she asked what those terms meant, he said "a frontal cunt." One of the mechanics overheard this conversation. Ms. Gilbert was humiliated and offended by Mr. Copeland's comments.

40.     A prime example of the intolerable hostile work environment Ms. Gilbert was forced to endure occurred on November 13, 2012, while Ms. Gilbert and several of her male co-workers were doing inventory. The owner, Mr. McAhren, and store manager, Mr. Walder,

8

encouraged the male employees to yell out terms demeaning to women when referring to the first letter of each bike's serial number. For "b," the employees were pressured into screaming "bitch," and for "c," cunt. The owner and store manager both told Mr. Knabe, one of the employees, that they would call him a "pussy" if he did not yell "cunt." So, Mr. Knabe yelled "cunt" and the owner and store manager laughed.

41.     Another employee, Mr. Bruechert, made a sexually offensive comment to Ms. Gilbert on November 16, 2012. After lifting some bike equipment, Ms. Gilbert said that her neck was hurting her. Mr. Bruechert responded, in front of other male employees, "hmmm, I wonder what that is from," implying that a sexual act had caused the pain in her neck. Ms. Gilbert was offended and embarrassed by Mr. Bruechert's comment.

42.     The sexual harassment was not targeted only at Ms. Gilbert. Dana Stryk, the fitting specialist, experienced sexually derogatory comments as well. Sometime in the Fall of 2011, Ms. Stryk bought a bike in the store for a man she was dating. Mr. McAhren, the owner, announced in front of several male employees, that "Dana buys bikes for all of the guys she has sex with." Ms. Gilbert discussed this incident with Ms. Stryk, who shared Ms. Gilbert's discomfort with the sexual harassment and hostile work environment at Freshbikes. Additionally, Ms. Gilbert later learned from Jody Bennett, who had been fired by Mr. McAhren in the Fall of 2010, that this sexually harassing conduct existed prior to Ms. Gilbert's arrival.

43.     In addition to being subjected to derogatory comments and conduct based on her sex, Ms. Gilbert was passed over for promotions because of her sex.

44.     Despite the hostile work environment and sexually demeaning comments, Ms. Gilbert worked extremely hard at her job and wanted to be successful at Freshbikes. She often raised new ideas to Mr. Walder about how Freshbikes could improve its sales but even

when he implemented one of her ideas, she did not receive any credit for it. For example, Ms. Gilbert suggested securing a new sponsorship with one of the largest racing teams in the D.C. area, which Mr. Walder implemented after Ms. Gilbert was terminated.

45.     Ms. Gilbert also wanted to be respected and she thought her working conditions would improve if she showed herself to be a valuable asset to Freshbikes. When she became a full-time employee at the Arlington store in February 2012, her title was "sales associate" despite the fact that many of her job duties were those of an assistant manager, such as managing inventory and training other sales associates.

46.     The owner always said that he wanted to promote her to a management position, but he never did. Nonetheless, Ms. Gilbert continued working hard in the hope of impressing the owner and store manager, and she even won an award for her sales performance on November 14, 2012.

47.     On at least ten occasions from February through November 2012, Ms. Gilbert asked the owner and the store manager to explain the qualifications they were looking for in a manager. While they promised they would do so, they never did.

48.     On several occasions during the February through November 2012 time period, Ms. Gilbert also asked if she could learn how to build bikes. Some bikes are not pre-assembled at the factory and many high-end bikes in particular start with a frame only, and all of the parts have to be selected by the customer and "built" onto the frame in the store, including the bottom bracket, cranks, handle bars, seat and seat post, wheels, cables, brakes and shifters, and virtually every other part of the completed bike. Usually this is done by the mechanics who also handle bike repairs in the store. Ms. Gilbert was discouraged from learning how to build bikes, even though similarly situated male employees were given the same opportunity.

10

49.     During the time Ms. Gilbert worked at Freshbikes, there were no female

mechanics, and no female employees were permitted to learn the skills of a mechanic, while

lesser qualified males were permitted to do this.  In fact, the owner, store manager, and the male

employees frequently said that women were "too stupid" to work on bikes.  Even though the

store's website touts that "our staff is what make [sic] Freshbikes so special," there is nothing

"special" about the store's misogyny and the staff who engaged in it.

50.     Upon information and belief, Freshbikes did not have a formal application process

for its management positions.  Freshbikes generally promoted employees to these positions

without requiring a formal application.

51.     From the time Ms. Gilbert began working full-time at the Arlington location in

February 2012, she made it clear to the owner and to the store manager that she was interested in

being promoted to a management position.

52.     In the Summer and Fall of 2012, she became aware of openings for management

positions – which were openly discussed among the employees – but was passed over for both

jobs by lesser qualified men who received these promotions on account of the fact that they were

men.

53.     In the Summer of 2012, Mr. Bruechert was promoted to a management position

over Ms. Gilbert despite the fact that Mr. Bruechert was a new hire and announced that he was

only working full-time at Freshbikes for a few months because he was attending law school part-

time in the Fall of 2012.  Not only was Ms. Bruechert less qualified than Ms. Gilbert, but to add

insult to injury, she had to train him in his new position.

54.     Around the same time that she was denied a promotion, Ms. Gilbert complained

to the owner and store manager about the sexual harassment she had experienced.  Not only did

11

they ignore her complaints, but upon information and belief, they factored her complaints into their decisions not to promote her and instead to promote male employees who were less qualified, and had less experience than she did.

55.     On October 3, 2012, during a meeting with her supervisors, Mr. Walder and Mr. Leavens, Ms. Gilbert informed them that she was unhappy about being passed over for a promotion without any explanation. Additionally, she told them it was unfair for her to perform assistant manager duties without receiving the corresponding title and authority. Mr. Walder assured Ms. Gilbert that she was a valuable employee and that her job was secure.

56.     Another management position became available in the Fall of 2012, after Mr. Bruechert gave up this position and reduced his hours at the store to attend law school. In or about early October 2012, Ms. Gilbert was once again passed over for the position by a less qualified male, Ian Knabe, who had only been at Freshbikes for a few months. She was told that part of the reason Mr. Knabe was promoted over her was that he knew how to work on bikes -- a skill that she was repeatedly denied the chance to learn.

57.     Throughout Ms. Gilbert's employment, no female was promoted to a management position at the Arlington store. Freshbikes discriminated against Ms. Gilbert when it failed to promote her because of her sex. She experienced anxiety from being constantly passed over for promotion as well as fearing that she was undervalued and would lose her job.

58.     However, during Ms. Gilbert's employment, Freshbikes did not have a Human Resources (HR) department, HR employees, a sexual harassment policy, or a policy handbook. As a result, Ms. Gilbert complained that she was being sexually harassed and discriminated against based on her gender to Mr. McAhren (owner), Mr. Walder (store manager), Mr. Davis (operations manager), Mr. Pippins (service manager), and her male co-workers, including

12

Mr. Bruechert, Mr. Copeland, Mr. Leavens, and Mr. Knabe. No one took any steps to prevent the type of conduct she experienced and nothing changed after Ms. Gilbert voiced her complaints.

59.     In the Spring of 2012, Ms. Gilbert told Mr. Davis and Mr. Bruechert that the work environment at the store was unbearable for women. Specifically, she mentioned to them the incident where Mr. Copeland lifted up her skirt, and asked them to help put an end to the sexual harassment and to stop encouraging Mr. Copeland's sexually derogatory conduct and comments. They ignored her requests and nothing changed as a result of this conversation.

60.     On September 5, 2012, Ms. Gilbert showed Mr. Copeland's threatening text message ("Don't fuck with me") to his manager, Mr. Pippins. It was Ms. Gilbert's hope that by raising this incident with Mr. Pippins, he would tell Mr. Copeland to stop treating her in this way. Rather than helping her, however, Mr. Pippins told Ms. Gilbert that she was partially to blame and that she should not tell the owner, Mr. McAhren, about the text message. Not trusting this advice, Ms. Gilbert notified Mr. McAhren, about the threatening text message. Mr. McAhren agreed that the text message was inappropriate and promised to discuss the matter with Mr. Copeland. Given that Mr. Copeland's behavior did not change, upon information and belief, Mr. McAhren either never spoke to Mr. Copeland about the incident or failed to instruct him to stop his conduct.

61.     On October 3, 2012, Ms. Gilbert met with Mr. Walder to again ask that the work environment become more professional, and she mentioned the July 2012 incident where Mr. Copeland had called her a "cunt" as an example of the inappropriate conduct she was forced to endure. Mr. Walder agreed that the environment had to change and assured her that he would talk to Mr. Copeland about the incident. However, upon information and belief, Mr. Walder

13

never talked to Mr. Copeland about his conduct and did nothing to make the environment at Freshbikes more professional and less hostile to Ms. Gilbert.

62.     Despite all of Ms. Gilbert's complaints, even the store manager's conduct did not improve, nor did the conduct of any other male employee. The store manager and the owner repeatedly ignored Ms. Gilbert's pleas to change the work environment, and in fact, their sexually harassing conduct became *worse* each time Ms. Gilbert complained.

63.     After the November 13, 2012 incident where the owner and store manager encouraged male employees to yell out derogatory terms, such as "bitch" or "cunt", while doing inventory in the store, Ms. Gilbert complained to Mr. Walder again. She said the following to him: "I really hate that word. You know that I hate that word. It makes me uncomfortable." Mr. Walder's response was "I know you do. I'm sorry I encouraged it." Nevertheless, he made no effort to stop employees from using such sexually derogatory terms in the workplace.

64.     A bad pattern had been allowed to develop and was not going to change. No action was taken to prevent the sexual harassment and no employee was ever reprimanded or fired for their inappropriate conduct. Of course the reason for this was that the owner and store manager were themselves responsible for the conduct and they freely allowed other male employees to engage in outrageous conduct without fear of penalty.

65.     On November 19, 2012, Ms. Gilbert once again met with Mr. McAhren and Mr. Walder. At that meeting, Mr. McAhren claimed that she made other employees feel uncomfortable. Mr. McAhren told Ms. Gilbert that she could either resign or he would have to terminate her. In response, Ms. Gilbert reiterated that she had been harassed and mistreated based on her sex during her employment and that nothing had been done to resolve her concerns.

14

66.     The next day, Ms. Gilbert informed Mr. McAhren that she would not resign because she had not done anything to deserve a forced resignation.  She reiterated that she had been the victim of sexual harassment and mistreatment, and that if anyone had been made to feel uncomfortable, it was her.  Ms. Gilbert expressed that she needed her job for financial reasons and refused to quit.  Mr. McAhren said that he would think about what she had said and, in the meantime, would give her a few days paid leave.

67.     On November 23, 2012, Mr. McAhren terminated Ms. Gilbert's employment.  Mr. McAhren offered her a severance package in return for an agreement not to bring any claims of discrimination or malfeasance against Freshbikes, but she rejected that offer.

68.     Ms. Gilbert's termination was an intentional retaliatory response to her complaints of sexual harassment, a hostile work environment and gender discrimination.

69.     As a direct and proximate result of Freshbikes' wrongful actions alleged herein, which were willful, malicious and in reckless disregard of Plaintiff's rights, Plaintiff suffered humiliation and embarrassment, had trouble sleeping, experienced anxiety and was constantly in fear of being harassed at work.

### CAUSES OF ACTION

### COUNT I
### SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

70.     Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71.     Title VII of the Civil Rights Act prohibits an employer from discriminating against its employees on the basis of sex.  This prohibition includes sexual harassment and creating a hostile work environment.

15

72.     Plaintiff is a female and thus protected from sexual harassment and a hostile work environment by Title VII.

73.     Plaintiff was subject to derogatory and offensive conduct that was unwelcome and based upon her sex.  This conduct was sufficiently severe and pervasive such that it altered the conditions of her employment and created a hostile work environment.

74.     Freshbikes has engaged in discrimination on the basis of gender by subjecting Plaintiff to sexual harassment and/or a hostile work environment in violation of Title VII.

75.     Freshbikes knew or should have known of the sexual harassment and hostile work environment Plaintiff suffered.

76.     Freshbikes' conduct was reckless, willful and malicious.

77.     Because the wrongful actions of Scott McAhren, Jason Walder and others were taken within the scope of their employment, Freshbikes is responsible for their actions based upon the doctrine of *respondeat superior*.

78.     As a direct result of Freshbikes' sexual harassment and/or hostile work environment, Plaintiff has suffered and will continue to suffer substantial injuries, including but not limited to lost wages and benefits, pecuniary losses, emotional distress, humiliation and embarrassment.

COUNT II<br>GENDER DISCRIMINATION

79.     Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80.     Title VII makes it unlawful for an employer to discriminate against any individual on account of her sex.

16

81.     On several occasions, Plaintiff asked the owner and her managers at Freshbikes about the qualifications for a management position and made them aware that she was interested in such a position.

82.     At all times relevant to this Complaint, Plaintiff was qualified for a management position, and in fact, the store manager, Mr. McAhren, told Ms. Gilbert that he wanted to promote her to a management position.

83.     Plaintiff was repeatedly passed over for management positions by lesser qualified male employees.

84.     Freshbikes discriminated against Plaintiff in regards to her compensation, terms, conditions, and privileges of employment by failing to promote her and to provide her with advancement and training opportunities because of her sex.

85.     Plaintiff's gender was the motivating factor in Freshbikes' decision to deny her promotions and advancement opportunities.

86.     Any other proffered reason set forth by Freshbikes is a pretext for its discrimination based on Plaintiff's gender.

87.     As a direct result of Freshbikes' discriminatory conduct, Plaintiff has suffered and will continue to suffer substantial injuries, including but not limited to lost wages and benefits, pecuniary losses, emotional distress, humiliation and embarrassment.

COUNT III
RETALIATION

88.     Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89.     Plaintiff is protected from retaliation by Title VII.

90.     Freshbikes violated Title VII by permitting a work environment to exist that was hostile and offensive to Plaintiff and other female employees.

91.     Plaintiff engaged in protected activity by making numerous complaints about this work environment and the sexual harassment she endured at Freshbikes. After nearly ten months of requesting that the gender discrimination, sexual harassment, and hostile work environment she was enduring at Freshbikes cease, Ms. Gilbert was terminated in retaliation for complaining about these problems.

92.     Freshbikes violated Title VII by terminating Ms. Gilbert's employment in direct retaliation for her complaints to Mr. McAhren, Mr. Walder and other Freshbikes managerial employees.

93.     Freshbikes engaged in the retaliation complained of herein with malice and reckless indifference to Plaintiff's protected rights.

94.     Because the actions of Mr. McAhren, Mr. Walder and others were taken within the scope of their employment, Freshbikes is responsible for their actions based upon the doctrine of *respondeat superior*.

95.     As a direct result of Freshbikes' retaliatory conduct, Plaintiff has suffered and will continue to suffer substantial injuries, including but not limited to lost wages and benefits, pecuniary losses, emotional distress, humiliation and embarrassment.

COUNT IV
VIOLATION OF THE FAIR LABOR STANDARDS ACT

96.     Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.     From February 2012 to November 23, 2012, Plaintiff was employed by Freshbikes as a non-exempt, salaried employee.  During that time, Plaintiff typically worked approximately ten (10) hours of overtime per week, but she was not compensated for that time.

98.     Plaintiff was entitled to be paid overtime at the overtime rate of one-and-one-half (1½) times her regular hourly rate.

99.     Freshbikes failed to pay Plaintiff for all overtime worked in accordance with the FLSA.

100.    Freshbikes' actions in failing to compensate Plaintiff in violation of the FLSA were willful and intentional.

101.    Freshbikes has not made a good faith effort to comply with the FLSA.

102.    As a direct result of Defendants' violation of the FLSA, Plaintiff has suffered harm, injury, and damages in addition to being deprived of the wages, overtime, and other legal protections to which she was entitled under the FLSA.  In addition to the amount of unpaid wages and benefits due and owing to Plaintiff, she is entitled to recover an equal amount as liquidated damages and an award of attorneys' fees pursuant to 29 U.S.C. § 216(b).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that this Court enter judgment against Freshbikes and in favor of Plaintiff, as follows:

(1)     Declare the conduct of Freshbikes towards Plaintiff to be in violation of Title VII of the Civil Rights Act of 1964 and the Fair Labor Standards Act of 1938;

(2)     Award past, present, and future economic loss sustained by Plaintiff, including but not limited to back pay, lost income and benefits and out-of-pocket pecuniary losses, plus interest;

19

(3)     Award compensatory damages for Plaintiff's emotional distress, humiliation and embarrassment;

(4)     Award punitive and exemplary damages based on Freshbikes' conduct that was willful, malicious, and in reckless disregard of Plaintiff's rights;

(5)     Award liquidated damages in the equal amount of Plaintiff's unpaid compensation and benefits, plus prejudgment interest, pursuant to 29 U.S.C. § 216(b);

(6)     Award Plaintiff all costs and expenses, including attorneys' fees;

(7)     Enjoin Freshbikes from engaging in such further discriminatory conduct and require all of Freshbikes' stores to engage in corrective and remedial action designed to promote more women to management positions and treat all female employees with respect; and

(8)     Grant such other and further relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: February 28, 2014

Respectfully submitted,

Jeremy M. White (Bar Number 16422)
KAYE SCHOLER LLP
901 15th Street, NW
Washington, DC  20005
Telephone (202) 682-3644
Facsimile (202) 414-0329
jeremy.white@kayescholer.com