IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMANDA GILBERT

    v.                     :     Civil Action No. DKC 14-0609

FRESHBIKES, LLC, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Title
VII and Fair Labor Standards Act ("FLSA") case are two motions
filed by Defendants: (1) a motion to dismiss pursuant to
Fed.R.Civ.P. 12(b)(1), (2), and (6) filed by Defendants
Freshbikes Franchising, LLC, Freshbikes Mosaic, LLC, and
Freshbikes2, LLC, (ECF Nos. 11 and 13); and (2) a motion to
transfer venue to the United States District for the Eastern
District of Virginia pursuant to 28 U.S.C. § 1404(a) filed by
Defendants Freshbikes Franchising, LLC, Freshbikes Mosaic, LLC,
Freshbikes2, LLC, and Freshbikes, LLC  (ECF Nos. 12 and 13).
The issues have been fully briefed, and the court now rules, no
hearing being deemed necessary.  Local Rule 105.6.  For the
following reasons, both motions will be denied.

I.   **Background**

  A.   **Factual Background**

  The following facts are set forth in the complaint. (ECF No. 1).   There are four Freshbikes entities, each named as a defendant: (1) Freshbikes Franchising, LLC, (2) Freshbikes Mosaic, LLC, (3) Freshbikes2, LLC, and (4) Freshbikes, LLC. Each Freshbikes entity, except for Freshbikes Franchising, owns and operates a bicycle retailer — in Bethesda, Maryland (Freshbikes2), Fairfax, Virginia (Freshbikes Mosaic), and Arlington, Virginia (Freshbikes). (ECF No. 1 ¶¶ 4-8).   Each Freshbikes retailer is owned by Mr. Scott McAhren and is separately incorporated. *Id.*

  Plaintiff Amanda Gilbert worked as a part-time sales associate at the Bethesda store operated by Freshbikes2 from May 2010 until February 2012. (*Id.* at ¶ 21).   Between fall 2011 and February 2012, Plaintiff split her time working between the Freshbikes2 Bethesda store and the Freshbikes Arlington store after Mr. McAhren asked her if she preferred to work more hours. *Id.*   In February 2012, Plaintiff accepted a full time sales associate position at the Arlington store and left the Bethesda store. (*Id.* at ¶ 25).   She worked solely in Arlington until she was terminated in November 2012. (*Id.* at ¶¶ 25, 67).

  Plaintiff alleges that when she worked at the Bethesda store, the store's assistant manager told her that "this company

2

is not very good for women." (*Id.* at ¶ 22). She claims that the store manager and other male co-workers at the Bethesda store regularly made "sexually derogatory and offensive comments" in her presence to refer to women. (*Id.* at ¶ 23, 24). Plaintiff alleges that her male co-workers and supervisors at the Arlington store also frequently made sexually derogatory and offensive comments in her presence either directed at her or regarding other women. (*Id.* at ¶ 30). Furthermore, they allegedly made repeated comments regarding Plaintiff's sex life and directed sexual innuendos at her. (*Id.* at ¶ 31-33). Plaintiff asserts that one co-worker twice "used a pole to lift up [her] skirt in front of other male employees," (*Id.* at ¶ 35), and another co-worker sent her a threatening text message after she complained to her supervisors about the harassment (*Id.* at ¶ 38). Plaintiff states that while she complained repeatedly to the Arlington store manager Jason Walder and to Mr. McAhren, who was frequently at the store, (*Id.* at ¶ 29), the offensive comments did not stop and no employee was ever reprimanded for the comments or conduct. (*Id.* at ¶ 64).

Plaintiff further contends that she was repeatedly passed over for promotions that were instead given to less qualified male employees, (*Id.* at ¶¶ 52-54), and was continually denied the opportunity to build bikes, an important skill in the store, "even though similarly situated male employees were given the

3

same opportunity." (*Id.* at ¶ 48).  Plaintiff also asserts that although she regularly worked 50 hours a week at the Arlington store, she was not paid overtime for any time spent working more than 40 hours a week. (*Id.* at ¶¶ 26, 97).

On November 19, 2012, Plaintiff spoke with Mr. McAhren who told Plaintiff that "she could either resign or he [McAhren] would have to terminate [her]." (*Id.* at ¶ 65).  When Plaintiff stated that she would not resign, Mr. McAhren terminated her employment on November 23, 2012. (*Id.* at ¶ 67).

### B.   Procedural Background

Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") on May 20, 2013.  On December 6, 2013, Plaintiff was issued a right to sue letter by the EEOC. (ECF No. 1-1).

Plaintiff commenced this action on March 4, 2014 against Defendants, asserting jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (ECF No. 1 ¶¶ 1, 14).  On March 26, 2014, three of the Defendants filed a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim. (ECF Nos. 11 and 13).  Freshbikes Franchising and Freshbikes Mosaic argue that they were never Plaintiff's employer and that they are Virginia LLCs with no contacts to Maryland. *Id*.

Freshbikes2 argues that Plaintiff's Title VII claims against it are time barred and that the events giving rise to the retaliation claim and the FLSA claim occurred when Freshbikes2 was no longer Plaintiff's employer. *Id.* All four Defendants also filed a motion to transfer venue to the Eastern District of Virginia on March 26. (ECF Nos. 12 and 13). Plaintiff opposed both motions on April 21 (ECF No. 18, 19). On May 15, Defendants Freshbikes Franchising, Franchising Mosaic, and Freshbikes2 replied in support of the motion to dismiss. (ECF No. 22). Defendant Freshbikes also filed a reply in support of the motion to transfer venue on May 15. (ECF No. 23).

## II. Analysis

### A. Subject Matter Jurisdiction

### 1. Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (*quoting* 2 James Wm. Moore, *et al.*, Moore's Federal Practice § 12.30[1] (3d ed. 1998)). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In deciding

a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans,* 166 F.3d at 647.   Such a motion should only be granted "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond,* 945 F.2d at 768.

Plaintiff has invoked federal question jurisdiction as the jurisdictional basis of this action.   Pursuant to 28 U.S.C. § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   Generally, whether any of a plaintiff's claims "arise under" federal law is determined by application of the well-pleaded complaint rule. *Ali v. Giant Food LLC/Stop & Shop Supermarket Co.,* 595 F.Supp.2d 618, 621 (D.Md. 2009) (*citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1 (1983)).   According to the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386 (1987).

## 2.  Analysis

While Defendants state that they bring the motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), they do

not specify in the motion why subject matter jurisdiction is lacking. Defendants assert that they were not Plaintiff's employer under either Title VII or the FLSA, and the court assumes that this is the basis for their subject matter challenge.

Subject matter jurisdiction in this case is based on federal question, as the claims are brought under two federal statutes: Title VII and the FLSA. Courts were previously divided on whether the defendant's status as "employer" as defined by Title VII was an issue implicating subject matter jurisdiction or an issue implicating the merits of the plaintiff's claim. *Compare Scarfo v. Ginsberg*, 175 F.3d 957, 961 (11th Cir. 1999) ("Whether the appellees constitute an "employer" within the definition of Title VII is a threshold jurisdictional issue."), *with Sharpe v. Jefferson Distrib. Co.*, 148 F.3d 676, 677 (7th Cir. 1998) (holding that a defendant without the fifteen employee minimum under Title VII was a "failure to meet a statutory requirement" rather than an issue with jurisdiction). The Supreme Court of the United States created a bright line rule in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006), however, when it held that employer status for purposes of Title VII liability related to the substantive adequacy of the claim and not jurisdiction. The Court explained that "when Congress does not rank a statutory limitation on

coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516.

Although *Arbaugh* involved Title VII's statutory fifteen employee requirement for employers, its holding can be generalized to other elements of Title VII's definition of "employer." *See Price v. Waste Management, Inc.*, No. ELH-13-02535, 2014 WL 1764722, at *5 (D.Md. Apr. 30, 2014) (stating that a Rule 12(b)(1) motion is not the proper mechanism to bring a defense regarding one's status as an "employer"); *Murphy-Taylor v. Hofmann*, 968 F.Supp.2d 693, 724 (D.Md. 2013) ("[A] defendant's qualification as the "employer" of a Title VII plaintiff constitutes a substantive "element of [the] plaintiff's claim for relief, not a jurisdictional issue."). Defendants' motion to dismiss for lack of subject matter jurisdiction is therefore misplaced as to Title VII, and the question of their status as Plaintiffs' employer is better suited to a Rule 12(b)(6) analysis, as the question implicates the merits of Plaintiff's claim.

The question of a defendant's status as "employer" for purposes of FLSA liability also does not implicate subject matter jurisdiction. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An "employee" is defined as "any individual employed by an employer," *id.* §

203(e)(1), and "employ" means "to suffer or permit to work," *id.* § 203(g).

As discussed above, the Supreme Court held in *Arbaugh* that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516. This decision has been applied to other labor statutes, such as the Family Medical Leave Act ("FMLA"), in deciding that a defendant's status as "employer" under these statutes relates to the substantive merits of the plaintiff's claim rather than jurisdiction. *See Sadowski v. U.S. Postal Serv.*, 643 F.Supp.2d 749, 751 (D.Md. 2009) (applying the *Arbaugh* decision to the FMLA and analyzing the defendant's contention of "employer" status as challenging the substantive sufficiency of the plaintiff's complaint rather than subject matter jurisdiction); *see also Minard v. ITC Deltacom Commc'ns. Inc.*, 447 F.3d 352, 356 (5th Cir. 2006) ("In light of the Supreme Court's decision in *Arbaugh,* we conclude that the definition section of the FMLA . . . is a substantive ingredient of a plaintiff's claim for relief, not a jurisdictional limitation.").

Courts in other jurisdictions have applied *Arbaugh* to FLSA claims. *See Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007) (holding that the FLSA's $500,000 annual dollar value limitation is an element of the plaintiff's claim rather than a

jurisdictional requirement); *Diaz v. Ming & Kent, Inc.*, No. C 09-05774 RS, 2010 WL 890040, at *2 (N.D.Cal. Mar. 8, 2010) (holding that a defendant's status as an "enterprise engaged in commerce" and a plaintiff as an "employee" of that enterprise were "substantive ingredients" of a meritorious FLSA claim rather than elements of subject matter jurisdiction); *Rodriguez v. Diego's Rest., Inc.*, 619 F.Supp.2d 1345, 1348 (S.D.Fla. 2009) (holding that individual or enterprise coverage is an element of the plaintiff's claim).   The analysis in these cases is persuasive.   Consequently, whether a defendant is an employer as defined by the FLSA is an element of the plaintiff's meritorious FLSA claim and does not implicate subject matter jurisdiction.

## B.   Failure to State a Claim

### 1.   Standard of Review

Defendants' argument that the complaint fails to state a plausible claim for relief is governed by Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.   *See Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).   A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."   *Bell Atl. Corp.*

*v. Twombly,* 550 U.S. 544, 555 n.3 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.   *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   In evaluating the complaint, unsupported legal allegations need not be accepted.   *See Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).   Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**2.   Analysis**

**a.   Title VII**

As discussed above, Defendants Freshbikes Franchising and Freshbikes Mosaic argue primarily that they are separate entities from Freshbikes and Freshbikes2 and were not Plaintiff's "employers" under Title VII.   Due to the ambiguity

of the term "employer" under the Act, courts have fashioned a variety of tests by which a defendant who does not directly employ the plaintiff may still be the plaintiff's "employer" under Title VII. *See Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006). One such test, the "integrated-employer test," seeks to determine whether two separate entities can be considered a "single employer" for Title VII purposes. *See id.; Tasciyan v. Med. Numerics*, 820 F.Supp.2d 664, 671-72 (D.Md. 2011); *Watson v. CSA, Ltd.*, 376 F.Supp.2d 588, 594 (D.Md. 2005). Under this test, the court may find that separate companies are "so interrelated that they constitute a single employer." *Hukill*, 192 F.3d at 442.[1]

The integrated-employer test involves four elements: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Hukill*, 192 F.3d at 442; *see also Romano v. U-Haul Int'l*, 233 F.3d 655, 665 (1st Cir. 2000)

---

[1] The court in *Hukill* analyzed the "integrated employer" test in terms of subject matter jurisdiction, but, as discussed *supra*, the Supreme Court later held in *Arbaugh* that the question of whether a defendant constitutes an "employer" under Title VII is not jurisdictional. *Compare Hukill*, 192 F.3d at 442, *with Arbaugh*, 546 U.S. at 515. The integrated employer test, however, is still used by courts in this district. *See Tasciyan*, 820 F.Supp.2d at 671 (applying the integrated employer test to determine whether an employer had the requisite fifteen employees under Title VII).

(recognizing that the majority of courts have applied the "integrated-enterprise test" when determining whether a single employer exists under Title VII); *Laurin v. Pokoik*, No. 02 CIV. 1938 (LMM), 2004 WL 513999, at *4 (S.D.N.Y. Mar. 15, 2004) (acknowledging that courts have applied the four factors to Title VII claims). While "control of labor operations is the most critical factor," courts have acknowledged that "no single factor is conclusive." *Hukill*, 192 F.3d at 442; *see also Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir. 1983), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) ("All four criteria need not be present in all cases.")[2]; *Laurin*, 2004 WL 513999, at *4 ("No one factor is controlling, and not every factor is required.").

Whether separate entities can be joined as a single employer is a fact-intensive inquiry. *See Tasciyan*, 820 F.Supp.2d at 672 ("The integrated employer test necessitates a fact-intensive inquiry."); *Laurin*, 2004 WL 513999, at *4 ("Whether entities can be joined as a single employer is a question of fact."). Therefore, "it is ordinarily inappropriate for courts to apply the integrated employer test at the motion to dismiss stage." *Tasciyan*, 820 F.Supp.2d at 672; *cf. Murphy-*

---

[2]   *Armbruster* was also abrogated on the ground that it identified the fifteen employee requirement as a jurisdictional element, but its application of the four factor test is still viable. *See Armbruster*, 711 F.2d at 1335, 1337.

*Taylor*, 968 F.Supp.2d at 727 (confirming that whether an entity is plaintiff's employer "is not appropriate for resolution as a pure matter of law, before discovery").

In deciding the common management element, courts look to whether the separate corporations share a common manager who runs day-to-day operations and has the authority to hire and fire employees. *See Hukill*, 192 F.3d at 443; *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 392 (8th Cir. 1977) (finding common management and ownership where the same individual was president of both corporations and ran day-to-day operations). The second element - interrelation between operations – can also be shown through evidence of a common manager who runs day-to-day operations and through employee transfers between locations. *See Hukill*, 192 F.3d at 443. The third factor - control of labor operations – is shown when a single party controls employment decisions across multiple corporations. *See id.* at 444 (finding no centralized control of labor relations when the company had "no power to hire, fire, or supervise employees" at the allegedly related companies). Employment decisions include the power to hire, fire, supervise, and set employee schedules. *Id*. The last element – common ownership – is shown when one individual owns and has financial control over the different enterprises. *See Watson*, 376 F.Supp.2d at 598.

14

Plaintiff has alleged sufficient facts to survive Defendants' motion to dismiss on the question of whether the four Freshbikes entities are a "single employer."  First, Plaintiff has alleged that Mr. McAhren has the authority to fire employees at the Arlington location, (ECF No. 1 ¶ 67), and that he "spent a considerable amount of time at the Arlington store," (*Id.* at ¶ 29).  These facts go toward the common management element.  Second, by alleging an incident of an employee transfer between store locations, (ECF No. 1 ¶¶ 21, 25), Plaintiff has met the interrelation between operations element. Third, Plaintiff has alleged sufficient facts to suggest that there is some centralized control of labor relations under Mr. McAhren, who asked Plaintiff to split her time between the Arlington and Bethesda stores and who fired her from the Arlington store.  (ECF No. 1 ¶¶ 21, 67). Fourth, with respect to common ownership, Plaintiff's allegation that Scott McAhren owns all the Freshbikes store locations meets the fourth element of the "single employer" test.  (ECF No. 1 ¶ 8).  In sum, Plaintiff has alleged sufficient facts to survive the motion to dismiss on the question of Freshbikes' single employer status under Title VII at this preliminary stage of the proceedings.

### b.  FLSA

Defendants Freshbikes Franchising, Freshbikes Mosaic, and Freshbikes2 similarly move to dismiss the FLSA claim, arguing

that they were not Plaintiff's "employers" as defined by the Act at the time of the events giving rise to the FLSA claim. Defendant Freshbikes2 argues that the claim is based on a time period that Plaintiff worked exclusively for the Freshbikes Arlington office and that Freshbikes2 was therefore not Plaintiff's "employer." (ECF No. 13, at 8). Freshbikes Franchising and Freshbikes Mosaic argue that they were *never* Plaintiff's "employer" as defined by the Act. (*Id.* at 5-6). Plaintiff responds that the FLSA claim is applicable to all Defendants because all four Freshbikes entities are effectively the "same enterprise" under the FLSA. (ECF No. 19).

The FLSA employs a different test than Title VII for determining when two separate entities constitute a single enterprise for purposes of liability. *See Roman v. Guapos III, Inc.*, 970 F.Supp.2d 407, 414 (D.Md. 2013). The term "employer" under the FLSA is generally "interpreted broadly to achieve Congress's intent to provide a remedy to employees for their employers' wage and hour violations." *Pearson v. Prof'l 50 States Prot., LLC*, No. RDB-09-3232, 2010 WL 4225533, at *3 (D.Md. Oct. 26, 2010); *see also Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (articulating that the FLSA should be interpreted broadly). The scope of the FLSA, however, is not limitless. *See Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999). For two separate entities to

16

constitute a "single enterprise" under the FLSA, they must conduct: "(1) related activities, (2) performed under unified operations or common control, and (3) for a common business purpose." *Brock v. Hamad*, 867 F.2d 804, 806 (4th Cir. 1989); *see also Martin v. Deiriggi*, 985 F.2d 129, 133 (4th Cir. 1992) (applying the three elements to determine a "single enterprise" for FLSA purposes).

Related activity in claims involving retail businesses can be shown if the retailing is done for a "common purpose," even when it "involv[es] different goods at different locations." *Martin,* 985 F.2d at 133 (*citing* 29 C.F.R. § 779.207). Related activity can also be shown if the businesses perform similar functions, such as serving similar products to similar clientele. *See Gionfriddo v. Jason Zink, LLC*, 769 F.Supp.2d 880, 892 (D.Md. 2011); *see also Donovan v. Grim Hotel Co.*, 747 F.2d 966, 970 (5th Cir. 1984) (finding that five hotels located in different cities and operated by separate corporate defendants satisfied the "related activities" element because they "operated in the same or a similar manner, . . . [and] loosely operated under the [same] name"). The second requirement – common control – exists "where total ownership is vested in a single person." *Brock*, 867 F.2d at 807.

The third requirement - a common business purpose - can be shown through activities that are directed at the "same business

objective" or at "similar objectives in which the group has an interest." *Brock*, 867 F.2d at 807. This common purpose must be more than just the common goal to make a profit, *see Martin*, 985 F.2d at 134 ("A joint profit motive is insufficient to support a finding of common business purpose."), but factors such as unified operation, related activity, interdependency, and a centralization of ownership or control can all indicate a common business purpose. *See Donovan*, 747 F.2d at 971; *see also Martin*, 985 F.2d at 133 ("[T]here is a close relationship between the 'related activities' and 'common business purpose' criteria for FLSA enterprise coverage.").

Plaintiff has alleged sufficient facts to suggest that the four Freshbikes' entities satisfy the elements of the "single enterprise" test under the FLSA at this preliminary stage of the proceedings. First, the facts alleged support the "related activities" element, as all three retailers sell bicycles and related gear, cater to similar clientele, and operate loosely under the "Freshbikes" name. (ECF No. 1 ¶¶ 8, 9). Second, Plaintiff has alleged sufficient facts to show that the four entities share common control under owner Mr. McAhren. (*Id.* at ¶ 8). Third, the facts may also support a "common business purpose" because of the alleged centralization of ownership and related activity. Plaintiff's allegations are sufficient at

18

this stage to survive Defendants' motion to dismiss on this issue.

### c.  Related Defenses

Defendants Freshbikes Franchising, Freshbikes Mosaic, and Freshbikes2 further move to dismiss for failure to state a claim by raising a variety of additional issues that cannot be resolved until the status of the four Defendants as "single employer" or "single enterprise" is determined under both Title VII and the FLSA.  As to the Title VII claim, Freshbikes2 argues that Plaintiff filed her claim with the EEOC more than 300 days after her departure from the Bethesda store, thereby rendering the claim time barred.  (ECF No. 13, at 7).  Plaintiff asserts that she did not terminate her employment at Freshbikes2 but instead transferred from one location to another within the same company.

Title VII provides that "a charge must be filed within 180 or 300 days 'after the alleged unlawful employment practice occurred.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (*citing* 42 U.S.C. § 2000e-5(e)(1)).  In a deferral jurisdiction, such as Maryland, the limitations period is 300 days.  *See* 42 U.S.C. § 2000e-5(e)(1); *Murphy-Taylor*, 968 F.Supp.2d at 713.  Plaintiff alleges she suffered a hostile work environment, and such an allegation implicates the continuing violation doctrine.  The doctrine provides that "all acts which

constitute the [Title VII] claim are part of the same unlawful employment practice," and "[i]t does not matter, for purposes of [Title VII], that some of the component acts of the hostile work environment fall outside the statutory time period." *Morgan*, 536 U.S. at 117, 122.  A plaintiff therefore "can recover for acts occurring even beyond that [time] period, as long as at least a portion of the hostile work environment occurred within the relevant limitations period." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 292-93 (4th Cir. 2004) (*citing Morgan*, 536 U.S. at 122).

Plaintiff has alleged that both the Bethesda and the Arlington stores perpetuate sexual harassment and gender discrimination.  (ECF No. 1 ¶¶ 22-24, 31-33, 43).  Whether this discrimination is part of an "unlawful employment practice" depends on whether the two entities are a single employer under Title VII, as discussed above.  If both Freshbikes entities are a "single employer," and Plaintiff's move to the Arlington retailer was simply a transfer within that same company, the harassment was a "continuing violation" under Title VII.  The EEOC filing would therefore be timely and could encompass the conduct at the Bethesda location.  Thus, the claim against Freshbikes2 survives dismissal, pending resolution on the question of whether the two entities are a "single employer" under Title VII.

Second, Freshbikes2 also moves to dismiss Plaintiff's retaliation claim. Freshbikes2 argues that Plaintiff left Freshbikes2 voluntarily in February 2012 when she became a full-time employee at the Arlington store. Freshbikes2 further argues that because it is a distinct corporation from Freshbikes, it was not her employer when Plaintiff was terminated from the Arlington store. (ECF No. 13, at 7). If Freshbikes2 and Freshbikes constitute a single employer under Title VII, however, Plaintiff may bring a claim against that single employer for retaliation. The question of Defendants' single employer status has not yet been determined as discussed above; therefore, it is inappropriate to rule on the matter at the motion to dismiss stage. *Cf. Murphy-Taylor*, 968 F.Supp.2d at 727-28 (denying a motion to dismiss Title VII claims, including a retaliation claim, after determining that employer status is a fact-bound question better suited for summary judgment filed after discovery).

For reasons stated above, Defendants' motion to dismiss the Title VII and FLSA claims will be denied.

## C. Personal Jurisdiction

### 1. Standard of Review

Defendants also move to dismiss Plaintiffs' complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). When a court's power to exercise personal jurisdiction is

challenged by a motion under Rule 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). A federal district court may exercise personal jurisdiction over a non-resident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland's long-arm statute, Md.Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212-13 (4th Cir. 2002). Thus, the inquiry for the court is whether the defendant purposefully established "minimum contacts" with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). *See also Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 474 (1985); *Base Metal Trading, Ltd.*, 283 F.3d at 213.

### 2. Analysis

Defendants Freshbikes Franchising and Freshbikes Mosaic argue that they are both Virginia corporations that have never conducted business in the state of Maryland. (ECF No. 13). In response, Plaintiff reiterated Freshbikes' single employer status and the existence of the store in Bethesda, Maryland. (ECF No. 19, at 7).

When jurisdiction turns on disputed facts, the court "may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When the court, however, rules "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing . . . in order to survive the jurisdictional challenge." *Id.* In deciding whether the plaintiff has met her burden, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

For the reasons discussed above, it is premature to rule on the issue of personal jurisdiction. If all four Freshbikes entities are a "single employer" under Title VII or a "single

enterprise" under the FLSA, personal jurisdiction is satisfied because Freshbikes2 is incorporated in Maryland and has sufficient minimum contacts with the jurisdiction. Therefore, construing all pleading allegations in the light most favorable to Plaintiff, it is inappropriate to dismiss at this time for lack of personal jurisdiction.

### D.   Venue Transfer

### 1.   Standard of Review

Defendants have also moved to transfer venue under 28 U.S.C. § 1404(a) to the Eastern District of Virginia. A plaintiff may properly bring a federal diversity action in in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To prevail on a motion to transfer venue under section 1404, "the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty Constr. Co.,* 198 F.Supp.2d 710, 711 (D.Md. 2002) (internal quotation omitted). *See also*

*Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002); *Dicken v. United States*, 862 F.Supp. 91, 92 (D.Md. 1994).

In deciding a motion to transfer venue under section 1404(a), the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). The host of convenience factors a court should consider include, *inter alia*, "(1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; . . . [and (4)] avoidance of unnecessary problems with conflicts of laws." *Brown v. Stallworth,* 235 F.Supp.2d 453, 456 (D.Md. 2002) (*quoting Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 622, n.4 (D.Md. 1998) (internal citations omitted)).

The burden is on the moving party to show that transfer to another forum is proper. *See Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F.Supp.2d 852, 856 (D.Md. 2005). In addition, "deference is generally given to a plaintiff's choice of forum," *CoStar Realty Info., Inc. v. Meissner*, 604 F.Supp.2d 757, 773 (D.Md. 2009), and that choice "should rarely be disturbed," *Collins v. Straight*, 748 F.2d 916, 921 (4th Cir. 1984). This deference is not limitless, however, and can be overcome. *See Lynch*, 237 F.Supp.2d at 617.

### 2.  **Analysis**

All Defendants moved to transfer venue to the Eastern District of Virginia.  Defendants argue that Virginia is a more appropriate forum because it is more convenient for the parties and witnesses and because a substantial part of the events giving rise to the claim occurred at a Virginia retailer.

Defendants name several witnesses who reside in Virginia, and they emphasize the Virginia location of the store where most of the events giving rise to the claim occurred.  (ECF No. 1, at 9).  Plaintiff emphasizes that Bethesda houses another store where the alleged events occurred and that a number of witnesses live in Maryland.  (ECF No. 18, at 5).  Therefore, the convenience factor appears neutral.  Defendants also argue that the interest of justice would be better served in Virginia because travel for witnesses would be less expensive and because there would be less delay in proceeding to trial.  (ECF No. 13, at 10).  Neither party would be greatly inconvenienced if the action were to continue in either forum, however, because of the close proximity between the transferor and transferee forums.  Defendants' arguments regarding convenience of the parties, convenience of the witnesses, ease of access to evidence, and inconvenience due to travel do not overcome their heavy burden.  The facts therefore do not support a transfer of venue.

## III. Conclusion

For the foregoing reasons, the motions to dismiss and to transfer venue will be denied.  A separate order will follow.


                         /s/
        _____
        DEBORAH K. CHASANOW
        United States District Judge